## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Tashawna Gaines** | * | |
| **3204 Fairview Road** | * | |
| **Gwynn Oak, MD 21207** | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| | * | **Case No.: 21-1211** |
| | * | |
| **v.** | * | |
| | * | |
| | * | |
| **Baltimore City, Maryland;** | * | **JURY TRIAL DEMANDED** |
| **Baltimore Police Department** | * | |
| **242 W. 29th Street** | * | |
| **Baltimore, MD 21211** | * | |
| | * | |
| *Defendant*. | * | |
| | * | |
| **Serve:** | * | |
| | * | |
| **The Baltimore City Law Department** | * | |
| **Office of Legal Affairs** | * | |
| **C/O City Hall, Room 101** | * | |
| **100 N. Holliday St., Suite 101** | * | |
| **Baltimore, MD 21202** | * | |
| | * | |
| **Baltimore Police Headquarters** | * | |
| **601 East Fayette St.** | * | |
| **Baltimore, MD 21202** | * | |
| | * | |

## COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES

COMES NOW, Plaintiff, Sergeant Tashawna Gaines (hereinafter "Plaintiff" or "Sgt. Gaines"), by and through her undersigned counsel Dionna Maria Lewis, Esq. complains against Defendant, Baltimore City Police Department (hereinafter "Defendant" or "BPD") and in support thereof states as follows:

## INTRODUCTION

1.        On August 10, 2016, the Department of Justice published a scathing report about the Baltimore Police Department's widespread constitutional violations, the targeting of African Americans, and a culture of retaliation. And, while the investigation and report focused largely on how Baltimore police abused the law, the people they were meant to serve, and the public trust, the complicit institutional engine that acquiesces in the destruction and demise of BPD's own Black women officers and sergeants remains pervasive, continuous, and swept under the rug. ***This case is about when the police are fearful of the police—their own brothers and sisters in blue.*** This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII") and the Civil Rights Act of 1866, Section 1981(a) ("Section 1981"); and the Maryland Fair Employment Practices Act, Md. Code § 20-601 *et seq*. (FEPA) for the Defendant's unlawful harassment, discrimination based on race (African American), sex (female) and retaliation against the Plaintiff, including, but not limited to, Defendant's unlawful and discriminatory preference and treatment, as well as retaliating against Plaintiff for her statutorily-protected activity.

## JURISDICTION AND VENUE

2.        This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and Section 1981, to redress and enjoin employment practices of the Defendant.

3.        This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

2

4.      Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

5.      Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transact substantial business in this District, and Defendant maintain employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

6.      Plaintiff has exhausted all of her administrative remedies.

7.      Plaintiff filed a charge with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on November 6, 2017 and an amended charge with the EEOC on May 25, 2018, alleging discrimination based on race (African American), sex (female), and retaliation. On April 26, 2019, the EEOC made a finding that the evidence provided by the Plaintiff established reasonable cause to believe that Defendant violated Title VII when it denied her rehire at her prior rank.

8.      The EEOC informed Plaintiff on June 25, 2019, that efforts to conciliate her charge have been unsuccessful.  Accordingly, Plaintiff's matter was referred to the Department of Justice ("DOJ") to open an investigation. It was after two (2) years, that Sgt. Gaines through counsel, requested her Right-to-sue letter to pursue litigation against the Defendant.

9.      On April 16, 2021, the DOJ issued a Right-to-Sue letter.

10.     Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

11.     Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

12.     Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of her constitutional and statutory rights.

13.     The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

14.     Plaintiff, Sergeant Tashawna Gaines, is an African American female who resides in Baltimore County.

15.     Defendant is a municipal police force, whose jurisdiction encompasses Baltimore, Maryland, the State's largest city.

16.     The Baltimore Police Department ("Defendant" or "BPD") is the 8th largest municipal police force in the United States, staffed by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of approximately 611,648 people.

17.     During the relevant period, Defendant employed Plaintiff, Sgt. Tashawna Gaines.

18.     During the relevant period, Plaintiff was Defendant's employee within the meaning of Title VII, and thus entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

19.     Plaintiff, Sgt. Tashawna Gaines, worked for the Baltimore Police Department for 16 years, leaving in 2015, and returning to BPD on March 13, 2017.

20.     Plaintiff asserts that Commissioner Kevin Davis, told Plaintiff that upon her return, her supervisor status as sergeant would not be an option. Plaintiff notes that other similarly situated African American male employees were granted their rank back as sergeant upon returning to work at BPD under the same or similar circumstances as Plaintiff, while she (African American female) was denied the same opportunity. Regarding the same, on April 26, 2019, the EEOC made a finding that the evidence provided by the Plaintiff established reasonable cause to believe that Defendant violated Title VII when it denied her rehire at her prior rank.

21.     On September 18, 2017, Sgt. Gaines sought secondary employment outside of the BPD at WBAL News Radio as a news anchor/reporter, scheduled for Saturdays and Sundays from 6 a.m. to 2 p.m.

22.     The secondary employment request was approved by Lieutenant Donald Gerkin, Shift Commander, and Major Rich Gibson, the District Commander and Commissioner Kevin Davis' designee for the Northern District, who possessed the authority to grant approval of the secondary employment. Subsequently however, Commissioner Davis denied the secondary employment approval claiming that the approval was null and void without his signature.

23.     It is BPD's position that Plaintiff completed the incorrect form. BPD further alleges that the correct form would have required Commissioner Davis to sign the request for secondary employment. However, at the time Plaintiff completed the form in September 2017, the form she completed was the only form available at the time, as the BPD's alleged "correct

form" was not created until March 2018.  Furthermore, at the time she filled out the form in September 2017, Sgt. Gaines was not informed that there were issues with the form she submitted prior to the initial approval signed by *two* of her superiors.

24. Further, Sgt. Gaines was not informed that the secondary employment she sought did not meet the requirements under the provisions of the BPD.

25. Instead of allowing Plaintiff to rectify any administrative issues, Commissioner Davis requested that Plaintiff either terminate her secondary employment or resign from the BPD or be charged with insubordination and failure to obey command.

26. Commissioner Davis also advised Major Gibson, Lieutenant Gerkin, and Sergeant Tanesha Todd to inform Plaintiff that she was not allowed to work at her secondary employment or be subjected to the above-mentioned disciplinary actions.

27. Other similarly situated Caucasian male employees, who sought a secondary employment request, were able to gain approval from their shift commanders instead of obtaining approval from Commissioner Davis.

28. Plaintiff requested an explanation as to why other similarly situated Caucasian male workers, obtained secondary employment approval at the shift commander level, but Plaintiff was mandated to either terminate her secondary employment, resign from BPD, or be charged with insubordination and failure to obey command.

29. Plaintiff noted that similarly situated Police Officer Sergeant Zimmerman[1] (Caucasian male) sought and was approved for secondary employment by his shift commander, and did not need to be approved by Commissioner Davis as was required by Plaintiff (African American female).

[1] Upon Plaintiff's information and belief, Sgt. Zimmerman has recently passed away.

6

30.     After Plaintiff documented her discrimination, BPD rescinded their disapproval and approved the secondary employment request again. However, BPD did not produce any evidence that Plaintiff was asked to complete the "correct" form as earlier indicated by BPD. Nonetheless, BPD essentially rejected the modification work schedule, which forced Plaintiff to resign from her position.

31.     On October 28, 2017, in order to avoid insubordinations or failure to obey order, Plaintiff was forced to retire from BPD. On the same day Plaintiff resigned, the BPD did not give Plaintiff a reasonable explanation as to why she was forced to resign, while a similarly situated Caucasian male (Sergeant Zimmerman) was not.

32.     Accordingly, Plaintiff Sgt. Gaines has been discriminated against based on her race (African American), sex (female) and retaliated against for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964 and Section 1981.

## COUNT I

### VIOLATION OF TITLE VII - RACE DISCRIMINATION

33.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

34.     A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

35.     Md. State Government ("S.G.") Code Ann. § 20-606 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits discrimination against employees on the basis of sex, race, as well as retaliation, as relevant here. See 42 U.S.C. §

2000e-2(a); 42 U.S.C. § 2000e-3(a)(1994)"). Due to the similarity between state and federal law, Maryland courts usually defer to the "federal criteria and seek guidance from Federal Title VII decisions in determining a violation of the analogous State and county provisions." Muse-Ariyoh v. Board of Education, 235, 242 (Md. App. 2017).

36.     Here, the four (4) elements of a *prima facie* case of race discrimination are met. Plaintiff is an African American woman is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as she had over 16 years of experience on the force, and maintained the title of Sergeant. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, where she was forced to resign, while similarly situated Caucasian male employees such as Officer Zimmerman were allowed to obtain secondary employment approval through their Shift Commander, and not forced to resign like Plaintiff. Lastly, the above-mentioned difference in treatment sufficiently demonstrates that the adverse employment action received by the Plaintiff gives an inference of race discrimination and prejudice.

37.     Because of her race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

38.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

39.     Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her race.

40.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race.

41.     Defendant has limited and reprimanded Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her race.

42.     Other employees who were similarly situated, but were non-Hispanic Caucasian individuals, which is different from Plaintiff, have been treated more favorably than Plaintiff with regards to the terms and conditions of employment and workplace conditions.

43.     Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

44.     Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

45.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

46.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race.

47.     Defendant discriminated against Plaintiff because of her race by engaging in, tolerating or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

48.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

49.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages –

including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

50.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

51.     Further, Defendant's treatment and actions were ongoing.

52.     Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

53.     Similarly situated non-Hispanic Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

54.     Baltimore City Police Department must comply with Title VII, but by and through their conduct, have violated Title VII.

## COUNT II

### VIOLATION OF TITLE VII – SEX DISCRIMINATION (GENDER)

55.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

56.     A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

57.     Md. State Government ("S.G.") Code Ann. § 20-606 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibit discrimination against employees on the basis of sex, race, as well as retaliation, as relevant here. See 42 U.S.C. §

2000e-2(a); 42 U.S.C. § 2000e-3(a)(1994)"). Due to the similarity between state and federal law, Maryland courts usually defer to the "federal criteria and seek guidance from Federal Title VII decisions in determining a violation of the analogous State and county provisions." *Muse-Ariyoh v. Board of Education*, 235, 242 (Md. App. 2017).

58.     Here, the four (4) elements of a *prima facie* case of sex discrimination are met. Plaintiff as an African American woman is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as she had over 16 years of experience on the force, and maintained the title of Sergeant. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, where she was forced to resign, while similarly situated Caucasian male employees such as Officer Zimmerman were allowed to obtain secondary employment approval through their Shift Commander, and not forced to resign like Plaintiff. Lastly, the above-mentioned difference in treatment sufficiently demonstrates that the adverse employment action received by the Plaintiff gives an inference of sex discrimination and prejudice.

59.     Defendant treated Plaintiff less favorably than similarly situated male employees.

60.     Because of her sex, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Title VII.

61.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

62.     Defendant knew that Plaintiff was a woman prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her sex.

63.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her sex.

64.     Defendant has limited, segregated and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her sex.

65.     Other employees who were similarly situated, but members of a class (men) different than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

66.     Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

67.     Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

68.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

69.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her sex.

70.     Defendant discriminated against Plaintiff because of her sex by engaging in, tolerating or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

71.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

72.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

73.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

74.     Further, Defendant's treatment and actions were ongoing.

75.     Plaintiff has incurred lost wages, loss of reputation now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT III

### HOSTILE WORK ENVIRONMENT AS A RESULT OF RACE AND SEX DISCRIMINATION

76.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

77.     When hostile work environment is alleged to have occurred as a result of unlawful discrimination, Complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment[2] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*,

---

[2] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No,

01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

78.     Here, the five (5) elements of a *prima facie* case of a hostile work environment

are met. Plaintiff belongs to a statutorily protected class as an African American woman.

Plaintiff was subjected to verbal harassment when she was told by Commissioner Kevin Davis

that she must either terminate her secondary employment, resign from BPD, or be charged with

insubordination and failure to obey command, based on her statutorily protected class as an

African American woman. Other similarly situated Caucasian male employees such as Officer

Zimmerman, were not subjected to the same harassment, and were allowed to obtain secondary

employment approval through their Shift Commander, and not forced to resign like Plaintiff. The

harassment affected a term or condition of her employment, namely when Plaintiff was forced to

resign from BPD. Lastly, there is a basis for imputing liability, where the Commissioner acting

on the BPD's behalf, subjected Plaintiff to the above-mentioned harassment, because of her

statutorily protected class as an African American woman.

79.     The actions and conduct of the Defendant as set forth herein created a hostile,

offensive, and intimidating work environment and detrimentally affected Plaintiff.

80.     The actions and conduct by the Defendant as set forth herein were severe, hostile,

and pervasive and constituted discrimination based on sex and race.

81.     The actions and conduct described herein would have detrimentally affected a

reasonable person of the same sex and race in Plaintiff's position.

82.     Defendant knew or should have known of the hostile work environment described

herein. Defendant has failed to address the problems and further failed to implement effective

and appropriate measures to stop the hostile work environment.

83.     By failing to protect Plaintiff within the Department; and by allowing for Caucasian male employees to receive more favorable treatment than Plaintiff in the terms and conditions of employment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

84.     Defendant's actions, and failure to act, amounted to discrimination based on race and sex under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment abrogates the states' Eleventh Amendment sovereign immunity. Title VII, through the 1972 amendment known as the Equal Employment Opportunity Act ("EEOA"), provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

85.     As a direct result of Defendant's above-mentioned unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

## COUNT IV

## VIOLATION OF TITLE VII – RETALIATION

86.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

87.     Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or

abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

88.     Here, Plaintiff was retaliated against after reporting discrimination to the EEOC. Soon after complaining of discrimination, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII. Specifically, Plaintiff complained of discrimination where Plaintiff complained to the EEOC that Commissioner Kevin Davis, told Plaintiff that upon her return, her supervisor status as sergeant would not be an option. On April 26, 2019, the EEOC made a finding that the evidence provided by the Plaintiff established reasonable cause to believe that Defendant violated Title VII when it denied her rehire at her prior rank. After Plaintiff's statutorily protected activity, she was subjected to retaliation, including but not limited to, where Plaintiff was forced to resign, even though similarly situated Caucasian male employees such as Officer Zimmerman were allowed to obtain secondary employment approval through their Shift Commander, and not forced to resign like Plaintiff.

89.     Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

90.     Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff engaged in the complaint process based on her informal and formal complaint filings.

91.    The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

92.    Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

93.    Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

94.    Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

95.    Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

96.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

97.    Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

98.    Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

99.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

100.   As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -

including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

101.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

102.     Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

103.     Baltimore City Police Department must comply with Title VII, and by and through their conduct, violated the law.

104.     The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

105.     Defendant is directly liable for the discriminatory acts or omissions of its employees while acting within the court and scope of their employment, under the theory of *Respondeat Superior*.

106.     Defendants actions were intentional, reckless, and malicious.

107.     As a direct and proximate cause of Defendants' conduct alleged throughout this complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages—including but not limited to past and future loss of income, benefits, and career opportunities—and is entitles to all available legal and equitable remedies.

108.     Plaintiff was humiliated, embarrassed, and made to ensure a great amount of pain and suffering. Plaintiff's injury is permanent in nature. Further, Defendants actions were ongoing.

109.     Plaintiff has incurred lost wages, loss of reputation, defamation of character now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT V

## VIOLATION OF SECTION 1981

110.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

111.     As an African American, Plaintiff is a member of a protected class.

112.     Because of her race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1981.

113.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiffs employment.

114.     Defendant knew that Plaintiff is an African American prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of her race.

115.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race (African American).

116.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee, because of her race (African American).

117.     Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

19

118.    Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

119.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

120.    Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American).

### COUNT VI

### VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT (FEPA) MD. CODE §20-601 ET SEQ.

121.    Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

122.    The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

123.    Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) or directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions.  Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

124.     Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

125.     Here, Plaintiff was subjected to harassment or offensive conduct that is based on race and sex, where Plaintiff was forced to resign, even though similarly situated Caucasian male employees such as Officer Zimmerman were allowed to obtain secondary employment approval through their Shift Commander, and not forced to resign like Plaintiff.

126.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American) and sex (female).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sergeant Tashawna Gaines, respectfully prays that this Honorable Court grant her the following relief:

a.     Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, Section 1981, and FEPA;

b.     Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.     Award back pay and compensatory damages in the amount of $10,000,000 (ten-million dollars and zero cents) that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendants alleged herein;

d.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.  Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: May 17, 2021

Respectfully submitted,

_Dionna Maria Lewis_

_____

Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 19486
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Tashawna Gaines*